IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **U.S. Bank National Association, as Trustee,** as successor in interest to **Bank of America, National Association, as Trustee,** as successor by merger to **LaSalle Bank National Association, as Trustee for The Registered Certificateholders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-through Certificates, Series 2007-PWR17 c/o C-III Asset Management LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**White Clay Associates, LLC,**<br><br>Defendant. | Civil Action No. 14-416-RGA |

MEMORANDUM ORDER

Before the Court is Defendant's Motion to Dismiss (D.I. 4) and related briefing. (D.I. 5, 6). In 2007, the Defendant borrowed approximately $6 million from Prudential Mortgage Capital Company, LLC (the "Note"). The Defendant secured the loan via a mortgage lien against a parcel of real property located in Newark, DE (the "Mortgage"). Plaintiff is the current assignee of the Note, holding it in trust, and now seeks to foreclose on the Mortgage.

Plaintiff initiated this action, based on diversity jurisdiction, "by and through C-III Asset Management LLC, its special servicer and attorney-in-fact." (D.I. 1 at 1 ¶ 1). Defendant alleges that C-III, although not named as a plaintiff, is a real and substantial party, and therefore its citizenship must be considered in order to determine whether complete diversity exists. Because

1

both Defendant and C-III are Delaware LLCs, Defendant alleges that Plaintiffs have not met their burden of proving diversity.

A plaintiff bears the burden of proving diversity of citizenship by a preponderance of the evidence. *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006). "[T]he citizenship of an LLC is determined by the citizenship of each of its members." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). Here, Plaintiff initially met that burden by alleging in the complaint that it is a citizen of Ohio and "[u]pon information and belief, none of the members of Defendant are citizens of the State of Ohio." (D.I. 1 at 2 ¶ 4). In its motion to dismiss, Defendant merely stated that C-III is a Delaware LLC, but made no mention of the citizenship of C-III's members. (D.I. 4 at 3 ¶ 7). Defendant is in the best position to know the citizenship of its members. Plaintiff is in the best, or at least a better, position to know the citizenship of the members of C-III. Yet neither side many any such representations. Therefore I can only assume that both Defendant and C-III have members who are citizens of Delaware, or at least of the same state, and thus C-III and Defendant are not diverse.

Even if C-III and Defendant are not diverse, however, diversity jurisdiction might still exist. Defendant's main allegation is that C-III is a real and substantial party, and therefore its citizenship must be considered. Yet the cases it relies upon in its motion to dismiss do not support its argument. Defendant cites to *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 358 (3d Cir. 2013), for the proposition that "a federal court must... base its jurisdiction only upon the citizenship of parties with a real interest in the litigation." (D.I. 4 at 4 ¶ 9). That case, however, does not address when a court must take into account entities who are not part of the litigation, but when a court may disregard nominal or formal parties. The full text of the citation states that "a federal court must disregard nominal or formal parties... and can base its

2

jurisdiction only upon the citizenship of parties with a real interest in the litigation." *Johnson*, 724 F.3d at 358. C-III is not a party to this litigation, and Defendant has made no allegation that C-III is a necessary party. Even if C-III did have a real interest in the litigation, that fact would not necessarily destroy diversity, as C-III is not a party to this action.

It was not until its reply that Defendant stated the arguably pertinent test[1] for determining whether C-III's citizenship must be considered. In *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 195 (2d Cir. 2003), the court stated that, "[W]here multiple parties all have a financial interest in a lawsuit, a strategic choice of parties in order to maintain diversity is *not* considered to be collusive so long as the party chosen to bring the suit is in fact the *master of the litigation*." (quoting *Transcontinental Oil Corp. v. Trenton Prods. Co.*, 560 F.2d 94, 103 (2d Cir. 1977) (emphasis added in *Gruss*)). Defendant contends that to determine whether a party is master of the litigation, "courts look to whether the party '(i) negotiated and signed the agreement that was the subject of the action; (ii) was most familiar with the matters in the suit; and (iii) had a real and substantial financial interest in the outcome of the litigation,'" and that C-III is the actual master of the litigation under this "test." (D.I. 6 at 3 ¶ 7) (quoting *Oscar Gruss*, 337 F.3d at 195). However, the statement to which Defendant cites is not a test for determining whether a party is master of the litigation. The Court of Appeals was simply noting the reasoning behind the District Court's holding that the plaintiff was master of the litigation. *Oscar Gruss*, 337 F.3d at 195 ("Specifically, the district court cited, among other things, that the plaintiff: (1) had negotiated and signed the agreement that was the subject of the action; (2) was most familiar

---

[1] Defendant cites to a case from the Second Circuit, but does not cite to any from the Third Circuit or Supreme Court.

with the matters in the suit; and (3) had a real and substantial financial interest in the outcome of the litigation.").

Even assuming that this were the appropriate "test," C-III is not master of the litigation. Neither Plaintiff nor C-III negotiated and signed the Note. It is Plaintiff, not C-III, who holds the Note. While C-III is likely more familiar with the day to day administration of the Note, it was Plaintiff, not C-III, who initiated this suit. While C-III might have an option to purchase the property, the option is not contingent upon this suit.[2] C-III is owed monthly fees for servicing the loan, and will get paid at some point. These fees are an obligation of the Trustee, not of the Defendant.[3] That the payment might happen after the foreclosure, or even with funds from the proceeds, is irrelevant. C-III does not have a financial interest dependent on the outcome of the litigation.

Two cases received special attention at oral argument, and I address them in turn. The first case is *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Property LLC*, 859 F. Supp. 2d 602 (S.D.N.Y. 2012). There, the Trustee of a loan sued to appoint a receiver. *Id.* at 602. Under the terms of the pooling and services agreement ("PSA"), the special servicer was obligated to "direct, manage, prosecute and/or defend any and all claims and litigation relating to… the loan." *Id.* at 605. The defendants alleged that the special servicer's citizenship must be taken into account for determining diversity. *Id.* at 606. The court held that the special servicer was not a real and substantial party because someone "who sues solely in his capacity as an agent is not a real and substantial party for diversity purposes." *Id.* at 608 (quoting *Oscar Gruss*, 337 F.3d at

---

[2] At oral argument, Plaintiff's counsel explained that § 3.18 of the PSA allows C-III to purchase the property only after the loan payments are 60 or 120 days past due, and if another party fails to exercise its option. Notably, this option does not depend on a foreclosure proceeding. Defendant's counsel did not contest these assertions.
[3] The Complaint seeks no relief for C-III.

194). The court held that the special servicer's stake in the litigation was solely due to its duties under the PSA. It therefore did not have its own stake in the litigation, thereby preserving diversity. *Id.* at 609.

Defendant attempts to distinguish *Nesbitt* because there the plaintiff only sought to appoint a receiver, and here the plaintiff "is seeking the remedy of foreclosure, which remedy contractually vests C-III's option to purchase the Property." (D.I. 6 at 7 ¶ 19). Yet the foreclosure does not vest any rights in C-III. In fact, the language of the PSA in *Nesbitt* appears to be identical to the language here. *Compare Nesbitt*, 859 F. Supp. 2d at 609 ("[N]either the Master Servicer nor the Special Servicer shall, without the Trustee's written consent ... initiate any action, suit or proceeding solely under the Trustee's name without indicating the Master Servicer's or Special Servicer's as applicable, representative capacity.") *with* D.I. 5-1 at p. 123 § 3.01(b). I see no reason to base the question of diversity on the remedy sought. *Nesbitt* is dispositive.

Lastly, Defendant alleges that Plaintiff admitted that a special servicer "is a real party in interest with standing in cases where the loan services by the servicer is the subject of litigation." (D.I. 4 at 4-5 ¶ 11) (quoting *U.S. Bank Nat. Ass'n v. Gunn*, 2014 WL 1247085, at *2 (D. Del. Mar. 25, 2014)). Yet a quick parsing of the case on which Defendant most heavily relies reveals that a real party in interest is different from a real and substantial party:

> Rule 17(a) of the Federal Rules of Civil Procedure requires that "[e]very action shall be prosecuted in the name of the real party in interest." FED.R.CIV.P. 17(a). This means that an "action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." 6A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1543, at 334 (2d ed. 1990). Rule 17 does not, however, affect jurisdiction and relates only to the determination of proper parties and the capacity to sue. 4 James William Moore, et al., *Moore's Federal Practice* § 17.13[1] (3d ed. 1999). The Supreme Court has noted that although there exists a "'rough symmetry' between the 'real party in interest' standard of Rule

5

17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy ... the two rules serve different purposes and need not produce identical outcomes in all cases." *Navarro*, 446 U.S. at 462 n. 9[.] Thus, although (under Rule 17(a)) [the plaintiff] is a "real party in interest" and, thus, the action may properly be maintained in its name, [the plaintiff] must also establish that it is a "real and substantial party to the controversy" for the purpose of determining diversity jurisdiction. To establish whether a plaintiff is a "real and substantial party to the controversy," a crucial distinction must be made between a plaintiff who sues solely in his capacity as an agent, on the one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation. [The defendant] correctly notes that where a plaintiff brings a suit solely in his representative capacity, the citizenship of the represented party, and not that of the representative, controls. *Moore's Federal Practice, supra* § 17.13[2][b].

*Oscar Gruss*, 337 F.3d at 193-94. C-III is not a party to this litigation. Had C-III brought suit, it would likely be a real party in interest, and thereby have standing. However, even had C-III brought suit, its citizenship would not be taken into account to determine diversity jurisdiction because it would only be acting as an agent.

Defendant's Motion to Dismiss (D.I. 4) is **DENIED**.

Entered this 17th day of June, 2014.

*[signature]*
United States District Judge

6